# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 18, 2001

## STATE OF TENNESSEE v. JOHN L. GOODWIN, III

**Post-Conviction Appeal from the Criminal Court for Sumner County**
**No. 5718      Tom E. Gray, Judge**

---

**No. M2001-00044-CCA-R3-PC - Filed August 2, 2002**

---

The petitioner, John L. Goodwin, III, was convicted of attempted rape and aggravated burglary. State v. John L. Goodwin, III, No. 01-C01-9108-CR-00242, 1992 Tenn. Crim. App. LEXIS 859, at *1 (Tenn. Crim. App. at Nashville, Nov. 12, 1992). The petitioner decided to waive his right to a direct appeal of his verdict and filed a post-conviction petition for review. Id. His petition was denied, and on appeal this Court found that the petitioner waived his right to a direct appeal based on erroneous advice of counsel and thus granted him an opportunity to file a motion for new trial and bring a delayed direct appeal. Id. at **3-4. The petitioner filed a motion for new trial, which the trial court denied, and the petitioner brought a delayed direct appeal before this Court. State v. Goodwin, 909 S.W.2d 35, 37 (Tenn. Crim. App. 1995). This Court affirmed the petitioner's conviction, but remanded the petitioner's case for re-sentencing. Id. at 45-46. The petitioner was re-sentenced, and he appealed his new sentence to this Court, as well as the trial court's denial of his writ of habeas corpus. State v. John L. Goodwin, III, No. 01C01-9601-CR-00013, 1997 Tenn. Crim. App. LEXIS 679, at *1 (Tenn. Crim. App. at Nashville, July 23, 1997). We reviewed his sentence and ultimately found that the trial court properly imposed the petitioner's new sentence. Id. While this Court was reviewing the petitioner's appeal of his new sentence, he filed an "application for coram nobis and/or in the alternative to re-open post-conviction petition." John L. Goodwin, III v. State, No. M2000-0757-CCA-R28-CO, at *2 (Tenn. Crim. App. at Nashville, Sept. 19, 1997) (no electronic database citation available). The trial court dismissed this pleading, and we affirmed that ruling. John L. Goodwin, III v. State, No. 01C01-9608-CR-00337 (Tenn. Crim. App. at Nashville, Sept. 19, 1997) (no electronic database citation available). The petitioner then filed a motion to re-open his post-conviction petition, which was ultimately dismissed without a hearing. Id. Thus, we remanded his case for a hearing to determine the merits of what was, essentially, his post-conviction petition. The petitioner now brings the instant appeal of the denial of his petition for post-conviction relief, challenging: the fairness of his post-conviction hearing; his sentence; his notice of the charges against him; the constitutionality of Tennessee Rule of Criminal Procedure 44(a); the alleged conspiracy between various court officers against him; the effectiveness of his counsel; and the jury instructions. After reviewing the petitioner's claims, we find that they are either waived, previously determined, or without merit.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which GARY R. WADE, P.J. and DAVID G. HAYES, J., joined.

John L. Goodwin, III, Pikeville, Tennessee, *pro se*.

Paul G. Summers, Attorney General & Reporter; Michael E. Moore, Solicitor General; David H. Findley, Assistant Attorney General; Lawrence Ray Whitley, District Attorney General; and Dee David Gay, Assistant District Attorney General, for appellee, State of Tennessee.

## OPINION

## Factual Background

In the petitioner's delayed direct appeal, this Court summarized the facts of his case as follows:

> On August 3, 1989, the victim returned from work to her home, in Hendersonville, Tennessee, between 3:30 and 4:00 in the afternoon. She went back to her bedroom to lie down. While she was lying down, she heard a door slam. Thinking it was her daughter or husband, whom she was expecting, the victim got up to see who it was. Upon opening the door to her bedroom, she saw the Defendant standing in her hallway. She told him to get out of her house, but he grabbed her by the arms and pushed her into the adjacent guest bedroom. The victim stated at trial that the Defendant repeated, "You know you want it," several times. The victim attempted to fight the Defendant off. He pushed her onto the bed, ripped her blouse, tore her bra and pulled off her pantyhose.
>
> As the victim and Defendant were fighting, they heard her husband's truck in the driveway. The Defendant got up and attempted to leave the house, but the victim's husband grabbed him as he was trying to walk out the door. The victim called the police, and the victim's husband got the Defendant's name and license plate number to "buy some time" until the police could get there. When the victim's husband thought the police should almost be at the house, he let the Defendant go. An officer arrived, radioed the license plate number to a back-up officer and the back-up officer picked up the Defendant.
>
> The Defendant was arrested and arraigned on August 3, 1989. On August 16, 1989, the Defendant filed a motion for self-representation. He was indicted by the Grand Jury of Sumner County on September 14, 1989. The trial court appointed counsel John Pellegrin on September 22, 1989. The trial court held a hearing on Defendant's motion for self-representation on October 27, 1989. The trial court granted the

motion; however, because of certain statements made by the Defendant, the trial court decided to let appointed counsel and Defendant decide if appointed counsel would represent the Defendant or act in an advisory capacity only. On November 9, 1989, the Defendant filed a motion for the trial court to enter an order granting the Defendant the right to represent himself. On November 20, 1989, the court entered an order granting the Defendant's motion to represent himself. The order also stated that Pellegrin would be Defendant's advisory counsel only. On November 20, 1989, the case was continued until December 12, because certain of the Defendant's subpoenas had not been served.

On December 6, 1989 Pellegrin filed a motion to withdraw as advisory counsel due to a conflict of interest. The trial court granted this motion on December 7. The trial court appointed Louis Oliver as advisory counsel after a hearing on December 11. The Defendant was convicted in a jury trial in which he represented himself on December 12, 1989. The Defendant filed a motion for the appointment of counsel on December 19. An order granting the motion was also filed December 19 appointing Keith Bell to represent the Defendant at his sentencing hearing. The Defendant was sentenced to eight years on each count to be served consecutively. Bell withdrew as counsel before the appeals process began, and the court ordered the Defendant to be represented by the Public Defender's Office.

David Doyle was the attorney of record for the Defendant's Motion for New Trial. This motion was denied. Following the advice of Doyle, the Defendant waived his right to appeal on May 10, 1990. He filed a pro se Petition for Post-conviction relief the same day. Defendant signed a waiver and was allowed to proceed pro se. He made a motion for the appointment of advisory counsel on September 17, 1990. David Doyle was appointed. Although it is not clear when, Doyle subsequently withdrew as advisory counsel.

The Defendant later decided to be represented by an attorney, and Matt Bastian was appointed to represent the Defendant at the post-conviction hearing, which took place April 19, 1991. The trial court denied the post-conviction petition and the Defendant appealed to this court. State v. John L. Goodwin, III, 1992 Tenn. Crim. App. LEXIS 859, No. 01-C01-9108-CR-00242 (Tenn. Crim. App., Nashville, filed Nov. 12, 1992). This court ordered that the Defendant proceed by a delayed direct appeal and ordered the trial court to allow the Defendant to file another motion for a new trial. Id. The motion for new trial was denied.

Goodwin, 909 S.W.2d at 38-39. Through Mr. Bastian, the petitioner brought a delayed direct appeal of his denied motion for new trial, and this Court affirmed the petitioner's convictions, but vacated his sentences and remanded his case for a new sentencing hearing because the trial court failed to compare the petitioner's potential sentences under the 1982 and 1989 sentencing acts and because the trial court did not adequately articulate either a basis for enhancing the petitioner's sentences or for sentencing him as a Range II offender. Id. at 45-46. The trial court re-sentenced the petitioner,

-3-

and he was represented by attorney John R. Phillips at the re-sentencing hearing. Phillips represented the petitioner on appeal of his new sentence, and the petitioner appealed the trial court's denial of his petition for writ of habeas corpus, which he had filed pro se. This Court reviewed both the petitioner's sentence and the trial court's denial of his writ and accordingly affirmed the lower court's determinations. John L. Goodwin, III, 1997 Tenn. Crim. App. LEXIS 679, at *1.

Prior to the issuance of that opinion, the petitioner filed a pro se "application for coram nobis and/or in the alternative to re-open original post-conviction petition." John L. Goodwin, III v. State, No. M2000-0757-CCA-R28-CO, at *2 (Tenn. Crim. App. at Nashville, Sept. 19, 1997) (no electronic database citation available). The trial court dismissed the pleading without conducting a hearing. Id. This Court reviewed the lower court's dismissal of the petitioner's pleading and affirmed it, finding that the application for writ of coram nobis was time-barred and that the petitioner had not set forth sufficient grounds for re-opening the petition for post-conviction relief. John L. Goodwin, III v. State, No. 01C01-9608-CR-00337 (Tenn. Crim. App. at Nashville, Sept. 19, 1997) (no electronic database citation available).

The petitioner subsequently filed a motion to reopen his petition for post-conviction relief. Judge Jane Wheatcraft deemed this motion to be a petition for post-conviction relief and ruled that the petitioner had presented a colorable claim for relief. Id. The petition was dismissed by another trial judge without a hearing, and thus this Court remanded the petitioner's case for a post-conviction hearing. Id. The post-conviction court held a hearing and found that the petitioner's claims did not merit relief.

The petitioner now brings the instant appeal of his denied petition for post-conviction relief, alleging (1) that he did not receive a full and fair post-conviction hearing; (2) that he was incorrectly sentenced; (3) that the state withheld exculpatory information; (4) that he received inadequate notice of the charges against him; (5) that Tennessee Rule of Criminal Procedure 44(a) is unconstitutional; (6) that the assistant district attorney and defense counsel conspired against him; (7) that the trial judge acted as a state agent; (8) that the jury instructions were erroneous; and (9) that he received ineffective assistance of counsel. After reviewing the petitioner's claims, we find that none of them merit relief.

## Post-Conviction Standard of Review

As mentioned supra, the petitioner is currently before this court alleging that his petition for post-conviction relief was wrongly denied. When analyzing allegations that a petitioner is entitled to post-conviction relief, we first note that a petitioner bringing a post-conviction petition for relief bears the burden of proving the allegations asserted in that petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." Hicks, 983 S.W.2d at 245 (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Furthermore, the appellate court is bound by the trial court's findings of fact, unless the record preponderates against those findings. Id.

**Post-Conviction Hearing**

The petitioner complains that he did not receive a fair post-conviction hearing because he was denied access to relevant records and because the state failed to issue several necessary subpoenas. We will address both of these allegations below.

(a) Petitioner's Access to Transcripts of Evidence and the Technical Record

The petitioner complains that he was erroneously denied access to the transcripts of evidence and the technical record for his case, despite his numerous requests for them. The petitioner claims that these records were necessary in order for him to properly frame and support his allegations of error. He first asserts that the state failed to file the record for review by the post-conviction court, despite its statutory obligation to do so. However, the petitioner relied on a repealed law to support this proposition. Per Tennessee Code Annotated section 40-30-208(b), a section of the 1995 Post-Conviction Act that was the law in 1999 when the petitioner filed for post-conviction relief, the district attorney general is empowered to file records or portions thereof for post-conviction or appellate review if the petitioner fails to include records when filing his petition. Tenn. Code Ann. § 40-30-208(b). However, the language of the statute is permissive and does not mandate action. See Marise E. Smith v. State, No. 01C01-9708-CR-00342, 1999 Tenn. Crim. App. LEXIS 906, at **9-10 (Tenn. Crim. App. at Nashville, Sept. 12, 1999). Thus, the state has no obligation to file such records. "[T]he petitioner has the obligation of ensuring that relevant portions of the record from the original case are included in the record on appeal." Woodruff v. State, No. M1998-00695-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 57, at *6 n.1 (Tenn. Crim. App. at Nashville, Jan. 25, 2000) (citing Tenn. R. App. P. 24; Morgan v. State, No. 03-C01-9611-CR-00404, 1999 Tenn. Crim. App. LEXIS 51, at *6 (Tenn. Crim. App. at Knoxville, Jan. 15, 1999)).[1]

Moreover, despite the petitioner's contention, these transcripts were made available to him when the post-conviction court ordered the state to file them with the clerk's office per Tennessee Rule of Supreme Court 28, section 6. See Tenn. R. Sup. Ct. 28, § 6. As stated by the post-conviction court,

> [The State] complied with section (6) of Rule 28 of the Tennessee Supreme Court as far as section (d) that orders the State to respond in an appropriate – to file with the clerk certain transcripts, exhibits, or records from the prior trial or hearing, and they have filed those records with the clerk. That is where they are to be filed.

---

[1] Furthermore, despite the petitioner's assertion that he was denied access to his trial record, including the jury instructions, the petitioner quotes portions of those instructions in his petition.

There is a transcript of Evidence, Volume 1 of 1, from the trial in this case. That may be something you say that you want to take a look at. That has been filed. So they complied with that.

Accordingly, it appears that the state complied with the court's orders to file certain transcripts of evidence and technical records that the court deemed crucial to the case and therefore these records were made available to the petitioner.[2]

However, the petitioner complains that he was erroneously denied access to certain other records, and that access to these records would enable him to establish his claims that the jury instructions were erroneous, that the public defender's office and the prosecutor conspired against him, and that his counsel was ineffective. However, the issues regarding the alleged conspiracy and alleged erroneous jury instructions are issues that have been either waived or previously determined. See Tenn. Code Ann. 40-30-206(g), (h); Tenn. R. Sup. Ct. 28, § 2(D), (E). Therefore, the post-conviction court was not obligated to allow the petitioner to access records in order to develop issues that were not within the scope of its review.

Regarding the petitioner's complaint that he was denied access to records that would allow him to develop his allegation that his various attorneys ineffectively represented him, the petitioner did not state his theory of how his attorneys were ineffective with sufficient specificity to warrant granting his request. Because the petitioner did not allege how his attorneys were ineffective, we must assume that he demanded "any and all" appellate records so that he could examine them and develop a basis for alleging that he received ineffective assistance of counsel. However, this Court has held that an appellant is not entitled to receive a complete trial transcript at state expense when the petitioner has not sufficiently articulated what he hopes to prove by reviewing the transcript.

> A petitioner is not entitled to a complete trial transcript at state expense to go on a fishing expedition to see what he can find. McCracken v. State, 529 S.W.2d 724 (Tenn. Crim. App. 1975). The petitioner must demonstrate to the satisfaction of the trial court, after filing his post[-]conviction petition, that the record will be of reasonable assistance to him in establishing his right to the relief sought. Dotson v. State, 477 S.W.2d 763 (Tenn. Crim. App. 1971).

Givens v. State, 702 S.W.2d 578, 580 (Tenn. Crim. App. 1985). Because the petitioner's rationale for requesting a copy of the entire appellate record was not specific, we find that the trial court did not err by failing to order the state to comply with his request.

### (b) Petitioner's Complaint Regarding the State's Failure to Issue A Subpoena

The petitioner further complains that the state erroneously failed to issue a subpoena for Susan P. Clayton, who would testify that she received an affidavit from the victim detailing the crime, and that this affidavit contradicted the victim's sworn trial testimony and was therefore

---

[2] We assume this because neither the technical record nor the transcripts from the petitioner's trial are part of the record filed for review.

exculpatory evidence.  The state counters that the petitioner failed to set forth how this affidavit contradicts the victim's sworn testimony and that even if the petitioner's claim does have merit, he waived the issue by failing to bring this error to the post-conviction court's attention in order to allow the court to remedy the situation.

We agree that the petitioner does not describe how this affidavit would have been inconsistent with the victim's sworn statement and therefore has not met his burden of proving his allegations with the requisite specificity.  See Tenn. Code Ann. § 40-30-210(f) (1997); Hicks, 983 S.W.2d at 245.  Moreover, although the petitioner did bring this omission to the court's attention during trial, during his latter conversations with the trial court about procuring the testimony of several witnesses, he stressed the importance of procuring his former counsel and, on several occasions, indicated that his counsel was the only remaining witness that he intended to call. Accordingly, because the petitioner did not inform the trial court of the importance of procuring this witness, we will not allow him to now claim that he was prejudiced by this omission.

### Sentencing Challenge

The petitioner challenges his current sentence, which was determined at his re-sentencing hearing.  Because this Court determined that the trial court erred when it originally sentenced the petitioner, we remanded his case for re-sentencing.  At the re-sentencing hearing, the trial court sentenced the petitioner as a Range II offender to serve an 18-year sentence, which is comprised of two consecutive 9-year sentences.  The petitioner complains that the trial court erroneously classified him as a Range II offender and  ordered him to serve his sentences consecutively.  However, this Court has previously determined that the trial court correctly both classified the petitioner as a Range II offender and ordered him to serve his sentences consecutively. See John L. Goodwin, 1997 Tenn. Crim. App. LEXIS 679, at **8-13.  Accordingly, we find that the petitioner's sentencing challenge lacks merit.

### *Brady* Violation

The petitioner alleges that the state withheld several pieces of exculpatory information, namely several affidavits supporting his arrest warrants.  These affidavits were made by the victim, and the petitioner states that he was entitled to receive them as exculpatory evidence because the victim's affidavits contradicted her sworn trial testimony.

At the outset of our analysis, we note that the petitioner waived this issue by failing to raise it on direct appeal. See Tenn. Code Ann. § 40-30-206(g).  Regardless of whether the issue has been waived, this issue lacks merit.

According to  Brady v. Maryland, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), in order to establish a Brady violation, four elements must be shown by the defendant:

1) that the defendant requested the information (unless the evidence is obviously exculpatory, in which case the State is bound to release the information whether requested or not);

2) that the State suppressed the information;

3) that the information was favorable to the accused; and

4) that the information was material.

See Johnson v. State, 38 S.W.3d 52, 56 (Tenn. 2001) (citing State v. Edgin, 902 S.W.2d 387, 390 (Tenn. 1995); State v. Walker, 910 S.W.2d 381, 389 (Tenn. 1995)).

However, the petitioner has not met the third and forth criteria above, namely that the evidence is favorable to the accused and that it is material. "Evidence is deemed to be material when 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Johnson, 38 S.W.2d at 58 (quoting Edgin, 902 S.W.2d at 390); see also Walker, 910 S.W.2d at 389; State v. Copeland, 983 S.W.2d 703, 706 (Tenn. Crim. App. 1998). The petitioner claims that if he had been able to impeach the victim with her affidavit, the jury would have learned that the victim's affidavit states that she first saw the petitioner in her room, while she testified at trial that she first saw him in her hallway. Presumably, the petitioner would have used this inconsistency to impeach the victim and establish that her recollection of his whereabouts in her house was inconsistent because she fabricated the story. However, at trial, the petitioner testified that, on the day of the alleged crime, he followed the victim and entered her house because he believed that she was in need of aid. In light of his admitted presence at the crime scene, we cannot say that the impeachment value of the victim's affidavits would have changed the outcome of his trial.[3] Accordingly, we find that this issue does not merit relief.[4]

### Whether Petitioner Was Given Proper Notice of the Charges Against Him

The petitioner contends that the trial court did not inform him of the charges against him and that if he had been properly informed of the charges and their severity, he would not have requested to represent himself at his trial. We first note that the petitioner waived this issue by failing to raise

---

[3] The petitioner also refers to another inconsistency between the victim's trial testimony and her sworn statement in her arrest affidavit, namely that in her affidavit the victim states that the "[s]ubject] was leaving when affiant's husband drove up," while at trial the victim testified that the petitioner only began to leave when her husband drove up. Again, the petitioner admitted at trial that he was indeed at the victim's home. Therefore, although the petitioner now claims that if he had impeached the victim with this inconsistency, he would have been able to demonstrate that the victim had fabricated the entire incident, we do not believe that the impeachment value of the affidavits is so significant that it would have affected the outcome of the trial.

[4] The petitioner also raises this issue as a deprivation of his constitutional right to effective cross-examination, claiming that because he was denied access to these affidavits, he was also denied an opportunity to effectively cross-examine the witness. Because we find that the impeachment value of these affidavits is significantly diminished in light of the petitioner's admitted presence at the crime scene, we find that he was not denied his right to effective cross-examination because he could not impeach the victim with her affidavits.

it on direct appeal. See Tenn. Code Ann. § 40-30-206(g). Regardless, the petitioner's allegation is contradicted by his own remarks during his opening statement.

> I know a lot of you may be wondering why is this man up there is representing himself, why doesn't he have this man right over here represent him or why didn't the Judge appoint him another one. I chose that my own self. I feel like this is a very serious charge. I don't take this charge very lightly. On the street I'm what – I've worked in the area of paralegal.[5] I'm not an attorney, but I do know my rights. I know that I have the right to get up here and confront witnesses. I have the right to speak to each one of you. And I have the right to put on my own set of witnesses to prove that I'm not guilty.
>
> You may find that to understand why a man would not want an attorney to represent him. Because, as I said, somebody says that I raped them. I want to look them dead square in the eye. I want to be able to ask the questions my own self.

Based on the above statements, the petitioner appears to have fully understood the severity of the charges against him at the time of his trial and to have made a careful decision to represent himself. Moreover, at the petitioner's motion for new trial hearing, his counsel acknowledged that the petitioner was aware of the charges against him when he made the decision to represent himself. Accordingly, we find that the petitioner's claim lacks merit.

### Constitutionality of Tennessee Rule of Criminal Procedure 44(a)

The petitioner challenges the constitutionality of Tennessee Rule of Criminal Procedure 44(a), arguing that it is unconstitutional because it does not require that a trial court advise a pro se defendant of the charges against him or her before accepting that defendant's request to represent him- or herself. Once more, the petitioner has waived this contention by failing to raise it on direct appeal. See Tenn. Code. Ann. § 40-30-206(g).

### Impartiality of Petitioner's Trial Judge

The petitioner contends that the trial judge who presided over his trial became prejudiced against him and acted as a state agent during his trial. According to the petitioner, the trial judge became impartial once she learned that the petitioner had sent a juror a letter that the juror found threatening. However, this issue has been waived by the petitioner because he did not raise this issue in his direct appeal. See Tenn. Code Ann. § 40-30-206(g); Tenn. R. Sup. Ct. 28, § 2(D). Furthermore, the petitioner alleges that the trial judge's impartiality is demonstrated by her erroneous application of an unsupportable enhancement factor during sentencing. However, this Court has previously addressed this allegation and found the application of the enhancement factor to have been the result of a proper exercise of discretion. See Goodwin, 1997 Tenn. Crim. App. LEXIS 679,

---

[5] The representation that the petitioner had worked as a paralegal was later determined to be false.

at **12-15; see also Tenn. Code Ann. § 40-30-206(h); Tenn. R. Sup. Ct. 28, § 2(E). Accordingly, we find that this issue does not merit post-conviction relief.

## Effectiveness of Assistance of Counsel

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). "Moreover, on appeal, the findings of fact made by the trial court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them." Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). "The burden is on the petitioner to show that the evidence preponderated against those findings." Id.

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. Adkins, 911 S.W.2d at 347. This Court may not second-guess a reasonably based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. Id. However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

### (1) Alleged Conspiracy Between the Assistant District Attorney and Petitioner's Counsel

The petitioner claims that his counsel ineffectively represented him at trial by conspiring with the assistant district attorney to ensure his conviction. The petitioner contends that his attorney's bias is demonstrated by his correspondence with the assistant district attorney and his volunteering to testify at his post-conviction hearing.

The petitioner's complaints are regarding the February 27, 1992, letter from his former counsel for new trial and post-conviction advisory counsel to the assistant district attorney. Counsel wrote this letter after he had been discharged as the petitioner's counsel on January 7, 1991. The letter references the petitioner's complaints about the calculation of his sentence and was apparently written in anticipation of the post-conviction hearing in which counsel was to be called as a witness because the petitioner alleged that counsel had rendered ineffective assistance. Thus, counsel was corresponding with the assistant district attorney regarding his testimony and strategy for defending against the petitioner's allegation that counsel had rendered ineffective assistance.

-10-

As counsel was not representing the petitioner at the time that he wrote to the assistant district attorney, he was able to reveal recent statements made to him by the petitioner because those statements were not made in the context of the attorney/client relationship. See Code Prof. Resp. R. 8 DR-4-101(A) (explaining that "secrets" are certain information that an attorney gains during the course of the attorney-client relationship); cf. Code Prof. Resp. R. 8 EC 4-6 (stating that an attorney should preserve the confidences and secrets of clients gained during the attorney/client relationship after the termination of that relationship).

Additionally, counsel did not act unethically by revealing confidences or secrets gained during the attorney/client relationship if those confidences were necessary to formulate his defense against the petitioner's accusation that counsel provided ineffective representation. See Code Prof. Resp. R. 8 DR-4-101(C)(4) (allowing attorneys to reveal "[c]onfidences or secrets necessary to . . . defend the lawyer . . . against an accusation of wrongful conduct"). After reviewing the content of the letter at issue, we find that the letter discussed only matters relevant to the petitioner's claim that he received ineffective assistance of counsel at the sentencing phase of his trial. Accordingly, we find that the post-conviction court correctly determined that counsel did not violate his ethical obligations when he corresponded with the assistant district attorney.

### (2) Effectiveness of Counsel Representing Petitioner at Re-Sentencing and the Post-Conviction Hearing

The petitioner makes similar complaints regarding the effectiveness of his original post-conviction counsel and counsel on direct appeal, as well as his counsel at the re-sentencing hearing and on appeal of the new sentence. He claims that both attorneys failed to: (a) investigate the petitioner's alibi and challenge the sufficiency of the evidence based on his alibi defense; (b) investigate the factual and legal claims in the affidavits supporting his arrest warrants and challenge the sufficiency of the evidence supporting his convictions on the basis of the contradictions contained within those affidavits; (c) investigate the pre-sentence report; (d) contest the state's notice of enhanced punishment; and (e) raise the issue of erroneous jury instructions.

The petitioner's first claim that both attorneys erroneously failed to investigate his alibi defense and challenge the sufficiency of the evidence supporting his conviction on that ground is meritless because the petitioner himself failed to present an alibi defense at trial. In fact, he admitted to being present at the crime scene at the time of the crime. Accordingly, he cannot now criticize his attorneys for failing to investigate a potential alibi and challenge the sufficiency of the evidence on the basis of an alibi defense theory that the petitioner refuted at trial.

Regarding the petitioner's claim that his attorneys erroneously failed to investigate the inconsistencies in the affidavits supporting his arrest warrants, appealing his conviction on the basis those inconsistencies would not have warranted relief because, as discussed supra, those inconsistencies would not have changed the outcome of the trial. See Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674 (1984). Thus, we cannot say that his attorneys' failure to raise this issue on appeal constituted deficient performance.

-11-

Moreover, the crux of the petitioner's complaint regarding his attorneys' failure to properly investigate the pre-sentence report is similar to his complaint that his attorneys did not properly investigate inconsistencies among various statements made by the victim: He complains that page two of his presentence report contains a description of the crime that was copied from one of the affidavits that we have discussed supra. For the same reasons outlined above, the petitioner has not demonstrated deficient performance based upon his attorneys' failure to investigate this discrepancy or raise it as a basis for a sufficiency appeal.

The petitioner also complains that his attorneys deficiently represented him by failing to investigate potential discrepancies in the petitioner's employment, military, and educational records. The petitioner questioned both of his attorneys, counsel who represented him on post-conviction and counsel who represented him at re-sentencing, about the inconsistencies between the victim's statements in the pre-sentence report and her testimony at trial and their failure to challenge the sufficiency of the evidence on that basis. Both attorneys responded that they had not appealed the sufficiency of the evidence on this basis because they felt that it would not have been a meritorious issue. The petitioner then went on to ask only one attorney, his counsel who represented him on his original post-conviction petition and on his delayed direct appeal, if he had investigated several other statements in the presentence report, namely facts regarding his educational level, his military record, and his employment issue. Counsel responded that he had discussed the pre-sentence report with the petitioner and that the petitioner had testified regarding several of these subject areas. The petitioner has failed to prove how his counsel deficiently represented him by failing to further verify the facts set forth in the presentence report. He does not allege what would have been discovered had counsel done further investigation nor how the petitioner was prejudiced by this omission. Because the petitioner has failed to prove his allegation by clear and convincing evidence, we find that this issue lacks merit.

The petitioner further complains that both of his attorneys were deficient for failing to challenge the state's notice of enhancement, claiming that the notice was "nothing more than an empty notice." While the petitioner's complaint is quite vague, after reviewing the record and the written notice of enhancement, we believe that he is complaining that the notice is deficient because it fails to inform the petitioner that the state will seek to have him classified as an especially aggravated offender if convicted. The petitioner was originally convicted in 1989, the year of the passage of the 1989 Sentencing Reform Act. See Tenn. Code Ann. §§ 40-35-101 to 504 (1997). Accordingly, the trial court that sentenced the petitioner was required to determine his sentence under both the 1982 Sentencing Act and the 1989 Sentencing Act and then sentence the defendant under the act that would require him to serve the least amount of time. See State v. Pearson, 858 S.W.2d 879, 884 (Tenn. 1993).

The structure of the 1982 Act categorizes defendants into two sentencing ranges, Range I and Range II. See Tenn. Code Ann. §§ 40-35-101 to 109 (Supp. 1986). Range I consisted of "standard offenders," Tenn. Code Ann. § 40-35-105 (Supp. 1986), and Range II consisted of "persistent offenders" and "especially aggravated offenders," Tenn. Code Ann. §§ 40-35-106, -107 (Supp. 1986). The 1989 Act is comprised of four sentencing ranges, Range I, "standard offenders," Tenn. Code Ann. § 40-35-105 (1997), Range II, "multiple offenders," Tenn. Code Ann. § 40-35-106

(1997), Range III, "persistent offenders," Tenn. Code Ann. § 40-35-107 (1997), and Range IV, "career offenders," Tenn. Code Ann. § 40-35-108 (1997). Additionally, the 1989 Act does not use the term "especially aggravated offender."

When the state filed its notice of intent to seek enhanced punishment in November of 1989, it used a form that reflected the 1982 Act's terminology, but altered it to reflect its notice of intent to seek to classify the petitioner as a Range II multiple offender under the new 1989 Act. The trial court sentenced the petitioner without determining the petitioner's potential sentence under both acts, and thus this court remanded the instant case for re-sentencing. See Goodwin, 909 S.W.2d at 45-46. On remand, the trial court sentenced the petitioner under the 1982 Act as a Range II offender after finding him to be an especially aggravated offender. See Goodwin, 1997 Tenn. Crim. App. LEXIS 679, at *16. When reviewing the new sentence, this Court determined that the trial court had failed to properly consider the petitioner's potential sentence under both acts and that the petitioner should have been sentenced under the 1989 Act because he was subject to a lesser sentencing range for his second-degree burglary conviction under the 1989 Act: Under the 1982 Act he faced 9-15 years, while his range was 6-10 years under the 1989 Act. Id. However, because the petitioner's 9-year sentence for this conviction was within the 1989 Act's range, and because the petitioner's sentence would have been enhanced by several applicable enhancement factors under the 1989 Act that were not figured into his sentence under the 1982 Act, this Court determined that the error was ultimately harmless. Id.

Accordingly, although the petitioner was not properly notified of the state's intent to classify him as an especially aggravated offender under the 1982 Act, we do not believe that proper notice would have affected the sentence received. While the petitioner was sentenced as an especially aggravated offender under the 1982 Act, he should have been sentenced as a multiple offender under the 1989 Act. The notice of intent to seek enhancement indicated that the prosecutor was properly seeking to classify the petitioner as a multiple offender. Furthermore, as mentioned supra, the petitioner would have received a similar sentence if sentenced under the 1989 Act. Because proper notice essentially would not have affected the sentencing hearing, we find that the petitioner's counsel did not render ineffective assistance. See Strickland, 466 U.S. at 694.

Finally, the petitioner complains that one attorney, the attorney who represented him on his original post-conviction petition and on his delayed direct appeal, erroneously failed to challenge the jury instructions. However, those instructions have not been filed as part of our record for review. The petitioner requested the instructions, but allegedly never received them. As discussed supra, the trial court was not required to comply with this request because his request failed to state what he hoped to prove by reviewing the instructions. See Givens, 702 S.W.2d at 580. We cannot determine the merits of this claim without reviewing the instructions. Therefore, we find that this issue does not merit relief.

**Conclusion**

For the foregoing reasons, we find that none of the petitioner's allegations merit relief. Accordingly, the judgment of the post-conviction court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE